# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

REED AND ROPER *v.* HEDGES *et al.*

Decided April 17, 1880.

*(GREEN, PRESIDENT, ABSENT.)

16 167
42 382
42 384

16 167
60 596

1880
Special Term.

Reed and Roper
v.
Hedges *et al.*

1. A guardian's bond is not invalid because the condition does not state the appointment of the guardian.

2. A guardian's bond contains a covenant or condition to save harmless the recorder by whom the guardian was appointed and who took the bond. Although this is not required by the statute, it does not avoid the bond.

3. Although the condition in a guardian's bond is not as extensive as the statute requires, yet as it relates to a part of the duty of the guardian, the bond is not void, but binds the obligors to the extent of the condition.

4. Where a court or officer has capacity to take a bond, and makes a mistake by omitting some condition prescribed, or inserting some condition not authorized or illegal, unless the statute by express words or necessary implication makes it wholly void, the bond is not void; the good shall not be vitiated by the bad, and the bond may be sued on, so far as the conditions are good, as a statutory bond.

5. There is no solid distinction between bonds and other deeds containing conditions, covenants and grants not *mala in se* but illegal at the common law, and those containing conditions, covenants or grants illegal by the express prohibition of statutes. In each case the bonds are void as to the conditions, covenants or grants that are illegal, and are good as to all others which are legal and unexceptionable in their purport. The only exception is, where the statute has avoided the whole instrument to all intents and purposes by express words or necessary implication.

*Counsel in the court below.

6. Under a fair construction of the last clause of section 3 of chapter 79 and section 13 of chapter 82 and of section 7 of chapter 83 of the Code of 1868, it is competent, and in many cases eminently proper, for the circuit court to direct the proceeds of realty in a case of partition brought under the said 79th chapter to be placed by the court in the hands of the guardian, as such, of the infant or infants to whom the same belong; and the circuit court in taking bond with security under the last named sections may take the bond from the guardian as such; but perhaps this is not indispensible.

7. The sureties of guardians should be held to have contemplated at the time of executing the bonds a possible liability and recovery, at least to the extent of the penalty of their bonds, whether it be for the personal estate or rents or the proceeds of realty belonging to the wards.

8. The conditions of the guardian's bond are broad, and, it seems, cover all moneys or estates of his ward which come into his hands.

9. The paramount object of the Legislature in enacting section 3 of chapter 79 and section 13 of chapter 82 and section 7 of chapter 83 of the Code of 1868, was to secure to the infant the realization of the proceeds of the sale of his realty; and if a court of equity in the exercise of its broad discretion under the laws directs the proceeds of the sale of realty, when the dividend of an infant exceeds $300.00, to be paid to the guardian without requiring the execution of bond with security from the guardian in addition to his official bond, as such, and the guardian receives such proceeds of sale, he and his security in his official bond would be liable for the same on such bond.

10. The bond taken in the circuit court is substantially in the form of the guardian's first bond given before the recorder; but this does not avoid the bond taken in the circuit court. The bond taken by the circuit court will be treated as additional security from the guardian, as it was competent for the court to require the guardian in such case to give bond with security as such guardian.

11. Several instruments may generally be united in one bill, when the same parties are liable in respect of each, and the same parties are interested in the money or property which was or is the subject of each.

12. H. is appointed guardian of two infants by the recorder of Jefferson county, and as such guardian, gives before such recorder one bond with security for both infants. Afterwards real estate in a suit for partition of real estate, in which the said infants have each an interest, (in which suit the said H. and his wards were parties) is decreed to be sold by a special commissioner appointed for the purpose by the circuit court of Jefferson county; and the real es-

tate is sold and the sale confirmed by the said court, and the dividend of each infant ward exceeds $300.00, and the court afterward directs such special commissioner to pay the proceeds of such sale to H., the guardian, upon his executing bond with security in the penalty of $6,000.00; and afterwards H. executes a bond in such penalty with condition substantially the same as that of his official bond with the same surety as in his official bond; said last bond should be regarded as additional security from the guardian; and in a suit by the wards to recover the amount due them both bonds may be joined in the same bill.

Appeal from three decrees of the circuit court of the county of Jefferson rendered, the first on the 28th day of April, 1875, the second on the 15th day of November, 1876, and the third on the 17th day of November, 1876, in a cause in chancery in said court then pending, wherein Lucy G. Reed and Mary C. Roper were plaintiffs and William L. Hedges and Edward Spaw or Spohr were defendants, granted upon the petition of said plaintiffs.

Hon. J. B. Hoge, judge of the third judicial circuit, rendered the decrees appealed from.

HAYMOND, JUDGE, furnishes the following statement of the case:

The bill in this cause was filed at rules in the clerk's office of the circuit court of Jefferson county on the 8th day of September, 1874, in which the plaintiffs allege, "that their grandfather by his will gave your oratrixes certain interest in real and personal estate; that your oratrix, Lucy G. Reed, was born January 14, 1850, and was married to John W. Reed November 6, 1872; and your oratrix, Mary C. Roper, was born the 25th day of November, 1853, and married William A. Roper on the 12th day of December, 1871; that on the 14th day of November, 1866, their mother being dead, William L. Hedges, their father, qualified before the recorder of Jefferson county, West Virginia, where your oratrixes then lived, as the guardian of your oratrixes, and entered into a bond required by law, dated that day, with one Ed-

ward Spaw as his security, one bond being executed as guardian of both of your oratrixes in the penalty of six thousand dollars, and conditioned as required by law in guardianship bonds. An attested copy of said bond and order of qualification is herewith filed as an exhibit and prayed to be taken as a part of this bill. That the said William L. Hedges, after so qualifying, though he received, as hereinafter shown, large amounts of money belonging to each of your oratrixes while they were infants and before their marriage, never did, as required by law, settle any account as such guardian. In the absence of any such settlement, your oratrixes are unable to state all the money so received by the said William L. Hedges, their guardian, but your oratrixes, by having the records of this court searched, have recently discovered that in the year 1866, and shortly after he qualified as guardian, the said William L. Hedges, as guardian of your oratrix, Mary C. Roper, then Mary C. Hedges, obtained an order of this court in the cause of *Willlam G. Butler, &c.,* against *William L. Hedges, &c.,* entered December 22, 1866, whereby the sale by James Logie as special commissioner, of their grandfather's land to Henry C. Ritner for $13,400.00, with interest from the day of sale, August 7, 1866, was confirmed, and said James Logie, special commissioner, directed to collect the purchase-money and loan out the portions coming to your oratrixes—that is to say, one fifth of the whole, or $2,680.00, the interest to be paid semi-annually to the said Logie, and to be paid by him semi-annually to the said William L. Hedges, the guardian of your oratrixes, so far as was necessary for the support and maintenance of your oratrixes. What amount of money was paid by the said James Logie under this order to the said William L. Hedges, their guardian, your oratrixes have been unable to ascertain—said W. L. Hedges never having settled any account. Subsequently, on the 14th day of April, 1869, the said William L. Hedges obtained an order in said cause that said James Logie, special commis-

sioner, should collect the fund loaned out under said previous order and pay the same over to William L. Hedges, guardian as aforesaid, upon his executing before the clerk of said court a bond, with good security, in the penalty of $6,000.00 conditioned according to law; and on the — day of April, 1869, the said William L. Hedges did execute such bond before the clerk of this court, with said Edward Spohr as his security, a certified copy of which bond is filed herewith marked plaintiff's exhibit No. 2, and prayed to be taken as. a part of this bill. And subsequently in said cause the said William L. Hedges, on the 22d day of April, 1869, obtained another order of this court at same term modifying the order of April 14, 1869, by ordering the said James Logie, special commissioner, to deliver to William L. Hedges, the guardian of your oratrixes, the bonds of the parties, who under the order aforesaid had borrowed the said money, which belonged to your oratrixes as their portion of the proceeds of the said sale of real estate of their grandfather. And shortly thereafter, and after the execution of said last named bond, as your oratrixes are informed, the said bonds were so delivered over and also some money paid over by the said James Logie. To a more perfect understanding of which orders your oratrixes file herewith as a part of this bill an attested copy of the proceedings and of all the orders made by the court in said cause marked plaintiff's exhibit "A." Your oratrixes have not been able to ascertain what amount of money and bonds were so paid over and transferred by James Logie to said William L. Hedges, their guardian; but they presume that with the interest which had been paid over to William L. Hedges, their guardian, by said James Logie, special commissioner, under the former order, the total amount was $2,680.00, with interest thereon from August 7, 1866. Your oratrixes have however ascertained, that the said William L. Hedges, as their guardian, did on the 26th day of April, 1869, receive of said James Logie the bond of John

Burns for $900.00, the bond of William R. Byers for $846.87, and three bonds of G. W. Johnson for $185.44 each, and that there was, when so transferred by James Logie, special commissioner, to said William L. Hedges, as the guardian of your oratrixes, considerable back interest due on each of the five bonds so transferred. Your oratrixes are informed by said William L. Hedges and aver, that all of these bonds were shortly thereafter and long before the said marriages of your said oratrixes, or either of them, and during the infancy of both of your oratrixes, collected by the said William L. Hedges as the guardian of your oratrixes.

"Your oratrixes further aver, that the said William L. Hedges on your oratrix, Lucy G. Reed, attaining her majority, which was January 14, 1871, did not pay to your oratrix one cent of the large sums of money collected by him, and that neither he nor his surety, Edward Spaw, has ever to this day paid anything to your oratrix, Lucy G. Reed, or to any one else on account of the amount due to her from her said guardian. And your oratrix, Mary C. Roper, avers that since the guardianship of her father terminated by her marriage December 12, 1871, the said William L. Hedges and Edward Spaw, his security as aforesaid, have never paid anything to her, or to any one else for her account, of his large indebtedness to her as her guardian, excepting only the sum of $400.00 which was paid on or about the 15th day April, 1872. And the said William L. Hedges and Edward Spaw pretend that all the residue of the estate of your oratrix, Mary C. Roper, was consumed in her maintenance and education, which your oratrix, Mary C. Roper, utterly denies, and insists and avers that the interest on the money belonging to her received by her said guardian, William L. Hedges, was more than sufficient to pay for her support and maintenance, and that the law as well as the decree first above named expressly restricted her said guardian from spending more than said interest without the leave of the court, which

Was never asked and never granted. And your oratrix, Lucy G. Reed, is informed that the said William L. Hedges and Edward Spaw pretend that the whole of her estate which went into the hands of her guardian, the said William L. Hedges, was consumed in her support and maintenance by her guardian, which your oratrix, Lucy G. Reed, utterly denies, and insists and avers that the interest on the money belonging to her received by her said guardian, William L. Hedges, was more than sufficient to pay said William L. Hedges for her support and maintenance and education furnished by him; and that the law as well as the decree first above named expressly restricted her said guardian from spending more than said interest without the leave of the court, which was never asked or given.

"And your oratrix, Lucy G. Reed, is further informed that the said William L. Hedges and Edward Spaw, his security as aforesaid, each of them pretend that immediately after she arrived of age and while living with her father, the said William L. Hedges, on the 21st day of February, 1871, she formally released both the said William L. Hedges and Edward Spaw from all responsibility to her on account of any liabilty due to her from William L. Hedges as her guardian. But your respondent denies that she ever did, then or at any other time, release the said William L. Hedges or the said Edward Spaw from their said liability, or from any part thereof. Your respondent remembers that about the time she came of age, whether before or after she cannot say, your respondent did sign some paper which was drawn by her said father, but which did not amount to a release in whole or in part of any responsibility of the said William L. Hedges or the said Edward Spaw; that the said paper was executed by her without any consideration whatever, and never was or could have been obligatory on her. The circumstances under which it was executed were these: Her said father had been doing a very large and apparently prosperous mercantile

business in Charlestown, in said county; he suddenly failed utterly; his business ceased; and from that day to the present time he has had no regular employment, with a large family on his hands; both he and your oratrix, who was then not quite twenty-one years old, as well as all the other members of his family, were greatly distressed and in very low spirits about their future, and your oratrix's father was especially dejected. Almost immediately after this overwhelming misfortune the said Edward Spaw, becoming apprehensive that he might be held liable as the security of said *Hedges* as the guardian of your oratrix, beset him with importunities that something should be at once done for his (Spaw's) relief. On the occasion when said paper was signed by your oratrix he had come to the residence of her said father, and in the presence of your oratrix, a girl then about twenty-one years old, whether more or less your oratrix cannot say, and so urged and taunted him in his then distressed state of of mind, that your oratrix in her sympathy for her father, and in her indignation at the rude and ungenerous manner in which he was being treated, felt disposed to do anything which might be asked of her for her father's relief at that time; especially did she think that such unbecoming importunity by the said Edward Spohr was unreasonable, for she had been led to believe by her father upon a settlement with her he would owe her little or nothing, as he still contends; and your oratrix being then utterly ignorant of what amount of her estate her father had received, or how the same had been expended, he never having settled any account or given her information about the same, except his general statement that he would owe her little or nothing on a settlement, and your oratrix confiding in him, and deeply sympathizing with him at the time, did sign some paper drawn up by him in the presence of the said Edward Spohr, and which was intended to release her father from his further importunities at that time. Your oratrix does not believe that the paper she so signed was a release or

amounted to a release even in its form, and she insists

that no matter what its form may turn out to be when produced, that it was executed under circumstances and at a time that would utterly destroy its efficiency as a release, and would render it in the view of a court of equity a mere nullity.

"Your oratrixes would further show to your honor that the estate so coming to them from their said grandfather is the sole and separate property of your oratrixes severally, and is free from the debts and control of their husbands severally, who each of them severally married your oratrixes severally at the times above named, in Jefferson county, West Virginia, where your oratrixes resided, and where said land of their grandfather was situated. Your oratrixes, therefore, pray that the said William L. Hedges and Edward Sporr, his surety, and the said William A. Roper and John Reed, your oratrixes' husbands severally, may be made defendants to this bill; that the said William L. Hedges, late guardian of your oratrixes, be required to settle his guardianship accounts before this court; that the said husbands of your oratrixes severally be required to answer this bill, and say whether they were not severally married at the times and places above stated, and whether they have any claim or demand to the said estates above severally claimed by your oratrixes as their sole and separate property; that the court will render a decree against the said William L. Hedges and Edward Spohr for the amount found due to your oratrixes severally on the settlement of their said guardianship accounts, and that such other and further relief may be rendered as to your honor may seem meet. And your oratrixes will ever pray, &c."

The first guardian's bond, executed as stated in the bill and filed with the bill as an exhibit, is as follows, viz:

"*Know all men by these presents*, That we, W. L. Hedges and Edward Spohr, are held and firmly bound

unto the State of West Virginia in the penal sum of six thousand dollars, to the payment whereof, well and truly to be made, we bind ourselves and each of us, our and each of our heirs, executors and administrators, jointly and severally, firmly by these presents. Sealed with our seals, and dated this 14th day of November, *Anno Domini* 1866.

"The condition of the above obligation is such, that if the above bound W. L. Hedges, executors and administrators, shall well and truly pay and deliver, or cause to be paid and delivered, unto Lucy G. Hedges and Mary G. Hedges, orphans of Mary M. Hedges, deceased, all such estate or estates as now is or hereafter shall appear to be due to the said orphans when and as soon as they shall attain to lawful age, or when thereto required by the recorder of Jefferson county, as also to keep harmless the said recorder, his and every one of his heirs, executors and administrators, from all trouble and damages that shall or may arise about the said estate, and in all things honestly and faithfully perform all the duties of said office and trust, then the above obligation to be . void, otherwise to remain in full force and virtue.

"Recorder, GEORGE BYERS.

"W. L. HEDGES,   [Seal.]<br>"EDWARD SPOHR,   [Seal.]"

It appears by the record, that said W. L. Hedges was appointed guardian of the plaintiffs on the 14th day of November, 1866, by the recorder of Jefferson county, and that on that day he with his said security entered into and acknowledged said bond.

Plaintiffs exhibit No. 2 filed with their bill is as follows, viz:

" *Know all men by these presents,* That we, W. L. Hedges and Edward J. Spaw, his surety, are held and firmly bound unto the State of West Virginia in the penal sum of six thousand dollars, to the payment whereof, well and truly to be made, we bind ourselves and each of us, our and each of our heirs, executors and ad-

ministrators, jointly and severally, firmly by these presents. Sealed with our seals and dated this 19th day of April, 1869.

"The condition of the above obligation is such, that if the above bound Wm. L. Hedges, or his executors and administrators, shall well and truly pay and deliver or cause to be paid and delivered unto Lucy G. Hedges and Mary C. Hedges, orphans of Mary M. Hedges, deceased, all such estate or estates as now is or hereafter shall appear to be due to the said orphans, when and as soon as they shall attain to lawful age, or when thereto required by the circuit court of Jefferson county, as also to keep harmless the said circuit court from all trouble and damages that shall or may arise about the said estate, and in all things honestly and faithfully perform all the duties of said office and trust, then the above obligation to be void, otherwise to remain in full force and virtue.

"W. L. HEDGES, [Seal.]<br>"EDWARD SPAW, [Seal.]"

"This bond was executed in my presence and Edward J. Spaw testified under oath as to his sufficiency.

"W. A. CHAPLINE, *Clerk C. C.*"

The defendant "Spohr" seems sometimes to have spelled his name Edward Spaw and sometimes "Edward Spohr;" but there is no question made as to this fact, and it must be taken, as the record stands, that they were both meant and intended for the same person, and that the only difference is in the mode of spelling his name. It appears from plaintiffs' exhibit A, filed with their bill, that in a suit in equity in the circuit court of Jefferson county, in which William G. Butler and others were plaintiffs, and William L. Hedges and others, including the plaintiffs in the cause at bar, were defendants, the said circuit court on the 12th day of June, 1866, decreed that Thomas Hite, J. G. Ruckle and M. W. Burr, commissioners appointed for the purpose, should go upon the realty in that cause mentioned and make partition thereof into five equal parcels, having reference to quantity,

23,

quality and value, and assign the same—one to Lucinda Butler, one to Eliza J. Henkle, one to Olivia A. Hammill, one to J. A. Kearney and the other to the infant defendants, Lucy G. and Catherine Hedges (the plaintiffs), and that they report the same with a plat and their proceedings to the court.

It further appears that on the 21st day of June, 1866, by consent of parties an amended bill was filed, making John T. Henkle, trustee of Eliza J. Henkle, a party defendant, and also setting forth the interest of the plaintiff, Giles C. Hammell, in the share of J. A. M. Kearney; and said John T. Henkle filed his answer, and thereupon the said cause came on to be heard upon the report of said commissioners, Hite, Ruckle and Burr, to which no exceptions were filed, and the same was approved and confirmed by the court. This decree then proceeds as follows: "And it appearing from the said report that a partition in kind of the said parcel of seventy-six acres cannot be made without detriment to the interest of all the parties interested, and that a sale of the said land is necessary and will best promote the interests of all concerned," &c. The court then proceeds in the decree to appoint Dr. James Logie a special commissioner with full power and authority to make sale of the said seventy-six acres of land upon these terms, namely: "One third in cash, the balance in two equal annual payments," &c. This decree also provides that before the said commissioner shall be authorized to receive any money under the said sale, he shall give bond with security before the clerk of the court, "conditioned for the faithful performance of the duties of his trust, and that he return the cash payment and bonds of the purchasers for the deferred payments with a report of his proceedings herein to a future term of the court."

It further appears by said exhibit A, that afterwards, on the 22d of December, 1866, the said cause again came on to be heard among other things upon the report of said Logie, commissioner appointed to sell the realty in

the bill and proceedings mentioned, " showing that on the 7th day of August, 1866, he sold on the terms prescribed by the decree of sale to Henry Bitner" for the sum of $13,400.00 the said lands and premises, to which report there were no exceptions filed. Thereupon the court in its decree then pronounced confirmed said report of sale ; and the decree then proceeds and recites as follows : " And the said commissioner, James Logie, having executed before the clerk of this court bond with security in the penalty of $20,000, conditioned for the faithful application of the funds to come to his hands under the former and this decree, it is ordered, that out of the cash payment received by him on said sale he first retain and pay for publishing the several notices of sale specified in his report seventy-two dollars and ten cents, for his commissions for making said sale and executing the deed hereinafter provided for one hundred and thirty eight and 50-100 dollars, and for excise on such deed thirteen and 50-100 dollars; that he next pay the costs of this suit and proceedings, including for counsel fees a fee for complainants' counsel only ; and that said James Logie, who is hereby appointed a special commissioner for the purpose, do convey, with covenants of special warranty, to the said Henry Bitner the said lands and premises to him sold as aforesaid, retaining in said deed a lien on said lands and premises to secure the payment of any part of said deferred payments which shall remain unpaid at the time ; and that a writ of possession do issue to put said purchaser in possession of said lands and premises ; that said Commissioner Logie withdraw and collect the bonds of the purchaser for the deferred payments, leaving copies thereof, and that the moneys remaining in his hands of the cash payment after discharging the costs and expenses aforesaid, and the proceeds of the said bonds for the deferred payments as collected, he disburse and distribute *pari passu* as follows, to-wit: Lucinda Butler, wife of Wm. G. Butler, one fifth of the amount; to John T. Henkle, trustee for Mrs.

Eliza J. Henkle, one fifth part; to Mrs. E. A. Hammill, one fifth part; and that said commissioner Logie loan out to some good substantial man one fifth—the share of the infant children of *Lucy G. Hedges*—at interest, the interest to be paid semi-annually, said interest to be paid by said Logie as collected to the guardian of said children, so far as necessary for their maintenance and education; and said Logie, in loaning out said fifth, shall require of the borrower thereof a trust-deed on lands sufficient to amply secure the same; and that he report his proceedings to this court; and as to the remaining fifth, the court will decree at a future term; but that out of the final collection and disbursement said commissioner retain for collecting and disbursing said funds $138.50 and in disbursing said funds he take the duplicate receipts of the distributees and that he file the duplicates with a report and statement of his proceedings with the papers of this cause."

It further appears by said exhibit A that afterwards, on the 14th day of April, 1869, the said circuit court made and entered this order in said cause, viz:

"This day came William L. Hedges, by H. H. Blackburn, his attorney, and moved the court to order the funds now in the hands of James Logie, as special commissioner of this court in the chancery proceedings of *Wm. G. Butler and others* v. *Catherine Hedges and others*, and to which Lucy G. and Mary C. Hedges, infant children of M. M. Hedges, deceased, are parties, to be paid to the said Wm. L. Hedges; and it appearing to the court that the said William L. Hedges has been duly appointed and has qualified before the recorder of the county as guardian in fact of said infant children, and has executed bond before said recorder in the sum of $6,000.00 conditioned according to law, it is ordered that said special commissioner, Logie, do collect said fund, if loaned out, and pay, the same over to the said Wm. L. Hedges upon his executing bond before the clerk of the court, with good

personal security, in the penalty of $6,000.00 conditioned according to law."

1880
Special Term.

Reed and Roper
v.
Hedges et al

It further appears that afterwards, on the 22d day of April, 1869, the said court in the last named cause made this order, viz:

"It being suggested to the court by commissioner Logie, who heretofore loaned out the fund of the defendants, Catherine L. Hedges, Lucy G. and Mary C. Hedges, infant children of M. M. Hedges, under an order in this cause of a former term of the court, that said funds have been loaned upon good land-bonds not yet due, it is ordered that said Logie do deliver to Wm. L. Hedges, guardian of said Lucy G. Hedges and sister, said bonds, and that the order made herein at a former day of the present term be modified as herein provided and decreed, after first deducting his commissions, and any costs he may have incurred."

It further appears that in said last named cause the said circuit court on the 15th day of September, 1869, made and entered the following order:

"Pursuant to the order herein of the last term of this court special commissioner James Logie this 15th of September, 1869, returned his report, to which there are no exceptions, and was argued by counsel. On consideration whereof, it appearing from said report and the receipts filed therewith that said commissioner Logie has delivered and paid to Wm. L. Hedges, guardian of Catherine L. Hedges and sister, all the bonds and money for their share of the real estate sold under a former decree in this cause, it is, therefore, adjudged, ordered and decreed that said report be and the same is hereby satisfied and confirmed in all respects."

In the case at bar the defendants, William A. Roper and John W. Reed, filed their joint answer at rules, in which they admit the facts stated in the bill, and also admit that the plaintiffs, their wives, have sole and separate estates in the moneys claimed by them in their bill,

and that they have no interest whatever in said moneys when recovered.

On the 10th day of November, 1874, this cause was heard on the bill and exhibits, and the joint answer of said Roper and Reed and bill taken for confessed as to the other defendants, and the court by its decree referred the cause to St. George T. Brooke, one of the commissioners of the court, "to settle the guardianship accounts of Wm. L. Hedges as guardian of Lucy G. Hedges, now Lucy G. Reed, and Mary C. Hedges, now Mary C. Roper, severally, charging him in such settlement with all their moneys severally received by him, whether from the sale of their real estate or otherwise, and charging them severally with all the moneys paid out for them severally, with which they are legally chargeable, and also with any moneys paid them severally since the termination of such guardianship, and to make report," &c.

At a term of said circuit court held on the 28th day of April, 1875, it appears that on motion of the defendant Edward "Spaw," who severs in his defense to this cause, leave was given him to file his general demurrer to the plaintiffs' bill, which was filed accordingly, and the plaintiffs joined in the demurrer, and the cause, to the extent of the decision of the court on the demurrer, was submitted to the court. Afterwards on the 28th day of April, 1876, the court made and entered a decree in the cause, overruling the said demurrer, so far as it objects to the bill upon the ground that the plaintiffs are improperly joined in the cause, but the "court being of opinion that although the said Spohr is liable as security of William L. Hedges, as guardian of the plaintiffs, upon the bond executed before the recorder of Jefferson county, bearing date November 14, 1866, a copy of which is exhibited with the bill, but is not bound as security of said guardian by virtue of the execution of the second bond exhibited with the bill, bearing date on the 19th day of April, 1869, which appears to have been ex-

ecuted and acknowledged before a former clerk of the circuit court of Jefferson, ordered that the demurrer of said "Spohr" be sustained, "upon the grounds which raise the question of responsibility of the said defendant, Spohr, under the said bond of April 19, 1869," and the court not acting upon any other questions arising in the cause continued the same.

The following are substantially the grounds of said demurrer, as appears by the record, viz: 1st. The plaintiffs are improperly joined in this cause. 2d. The copy of the bond exhibited with the bill, treated as a guardian's bond, was not, under the laws of West Virginia at the time said bond was taken, properly taken, and is therefore not binding upon the demurrant as security therein for said Hedges. 3d. The bill improperly unites the two seperate cases, or causes of action, one upon the alleged guardian's bond, the other upon the bond executed under the order or decree of the circuit court of Jefferson county disposing of the real estate of the infants, &c. 4th. The bill sets out that large sums of money were paid to said Hedges as guardian of the plaintiffs, being the principal proceeds of real estate belonging to said infants and sold for the purpose of partition, which amounts could not properly be paid over to said Hedges as guardian of said wards, and that the guardian's bond even if good does not cover any such payments. 5th. So far as the relief prayed for in the bill rests upon the bond executed before and in pursuance of the order of the circuit court of Jefferson county requiring said bond, and as to that part of the bill this defendant demurs, upon the ground that as to said bond there is a full and complete remedy at law upon said bond, and that as to it, and the liability of the said defendant as security in said bond as charged, he cannot properly be charged in this cause. 6th. "The defendant demurs further to that part of the bill which sets out and makes an exhibit of so much of the record and proceedings in the chancery cause of *W. G. Butler* v. *Hedges,, &c.* as appertains to

this cause, because it is shown from the decree and pro-
ceedings in that cause, that the sums of money ordered
to be paid to the guardian, Hedges, were so paid, and
for the purposes specified; that no liability therefor
arises as against this defendant, either upon the alleged
guardian-bond or the bond executed under the order of
the circuit court of Jefferson county in said cause of
*Butler* v. *Hedges, &c ,*"

On the 24th day of October, 1876, on motion of Mary
C. Roper, by her attorney, the court ordered that the
cause proceed in the name of said Mary C. Roper with
the other party plaintiff in the cause, she having arrived
at the age of twenty-one years.   Afterwards on the 15th
day of November, 1876, the cause again came on to be
heard, and the court made and entered therein a decree
as follows:

"This cause coming on again to be heard this 15th
day of November, 1876, upon the papers formerly read,
and the report of commissioner Brooke, returned Feb-
ruary 27, 1876, was argued by counsel.   Upon consider-
ation whereof the court, adhering to the opinion ex-
pressed in the decree of April 28, 1875, that the defend-
ant, Edward Spohr, cannot in this suit be made liable as
security for Wm. L. Hedges in the bond for the proceeds
of the real estate sold under the decree of the late cir-
cuit court of Jefferson, and the court now deciding that
said Spohr is bound as security in the guardianship bond
proper as guardian of Lucy G. Reed and of Mary C.
Hedges, now the wife of W. A. Roper, and that the an-
nually accruing interest on the sums paid over to said
Wm. L. Hedges by James Logie, special commissioner,
in the case of *Wm. G. Butler and others against Wm.
L. Hedges and others*, in the proceedings referred to,
ought to be charged as against said guardian, the same of
course binding his surety in said guardian-bond proper;
and it appearing from the papers in the cause, and from
said report, that so far as said annual interest was re-
ceived by said Wm. L. Hedges probably the same was

fully offsetted and absorbed by the support, maintenance
and education of the said wards of Wm. L. Hedges, so as to show that under his guardian-bond proper he was in no manner in default, but that the same ought to appear and be shown, if such be the case, by a distinct report of the commissioner, and that such report may properly be made at the present term, it is, therefore, further ordered and decreed that this cause be further recommitted to the same commissioner for such forthwith report to be returned to the present term."

The report of commissioner Brooke, made under the first decree of reference, charges Hedges as guardian with the amount received from commissioner Logie, and finds to be due to plaintiff, Mary C. Roper, on January 1st, 1875, $888.43, and to plaintiff, Lucy G. Reed, $1,-399.24. Commissioner Brooke also files an alternate statement with his report, which, he says, he made at the special request of said Hedges. This alternate statement also charges said Hedges as guardian with the bonds so received from said Logie, and ascertains the amount due to plaintiff, Mary C. Roper, on January 1, 1875, to be $333.91, and the amount due to plaintiff, Lucy G. Reed, at the same date to be $625.38. The said comissioner Brooke made his supplemental report, directed by the decree of the 15th day of November, 1876, in which he does not charge Hedges as guardian with the bonds, etc. received of Logie, but only with the interest, and on this basis he reports in effect that there is nothing due to either of the plaintiffs from said Hedges as their guardian.

Afterwards the court made and entered the following decree in the cause, namely: "This cause coming on further to be heard this 17th of November, 1876, upon the papers formerly read, and upon the report of commissioner Brooke made to the present term of the court; and it appearing from said report that upon due settlement of the guardianship accounts of William L. Hedges, as guardian of Lucy G. Reed and of Mary C.

Hedges, now the wife of W. A. Roper, that nothing is due from said guardian to said wards for which his surety in the guardian bond is responsible, it is, therefore, adjudged, ordered and decreed that this cause as against the said defendant, Edward Spohr, be dismissed, and that he recover his separate costs about his suit in this behalf expended."

From this decree and those of the 15th of November, 1876, and the 28th day of April, 1875, the plaintiffs have obtained an appeal to this court.

*McDonald & Beckwith*, for appellants, cited the following authorities :

1 Call 333 ; 13 Gratt. 176 ; Code p. 493 § 7 ; *Id.* pp. 496, 497 §§ 5, 15 ; *Id.* ch. 79, p. 487 ; *Id.* ch. 83, p. 495 ; 24 Gratt. 284 ; Story Eq. Pl. § 278 ; 1 Dan. Chy. Pr. 337 ; 3 Leigh 17 ; The Reporter, June 17, 1878, p. 758.

*Andrew Hunter*, for appellees, cited the following authorities :

3 Gratt. 358 ; 2 Leigh 696.

HAYMOND, JUDGE, delivered the opinion of the Court :

I understand from the decrees of the circuit court made in this cause on the 28th day of April, 1876, and on the 15th day of November, 1876, that that court held and decided in and by said decrees that the defendant, Spohr, cannot in this suit be held liable, as security for the defendant Hedges in the bond, for the proceeds of the real estate sold under the decree of the circuit court of Jefferson county in the bill mentioned, but that he (Spohr) is bound as security in the guardianship bond proper (that is to say the original guardian-bond), as guardian of Lucy G. Reed and Mary C. Roper, and that the annually accruing interest on the sums paid to said Hedges by James Logie, special commissioner in the case of Wm. G. Butler and others against Wm. L. Hedges and others in the proceedings

referred to, ought to be charged as against said guardian, the same of course binding his surety in said original guardian's bond, and that said Spohr as security for Hedges on said original bond is not liable for the proceeds of the sale of said real estate belonging to said wards, which was received by said Hedges from special commissioner Logie; and also that said Spohr cannot be held and decreed against in this suit, as the surety of said Hedges in the second or last bond, for the proceeds of the sale of said real estate which Hedges received from said Logie. But I do not understand from said decrees, that said court decided the question, whether the said second or last bond was valid and binding on its face upon Spohr as security or not. In other words, the circuit court seems to have been of opinion and to have decided, that the said security (Spohr) in the said original guardian's bond could not be held liable in this suit upon said original bond for the proceeds of the sale of said realty received by him as aforesaid, but only for said interest thereon received by him from said Logie, special commissioner, and that the plaintiffs could not charge the defendant, Spohr, as surety in this suit upon the said second and last bond for the proceeds of the said realty, whether said second and last bond was valid or not. And the decree of the 17th day of November, 1876, which dismissed the plaintiffs' bill, was based upon the principles settled in the said decrees of the 28th of April, 1876, and the 15th day of November, 1876, and carried those principles so settled into practical effect.

The errors assigned by the appellants to the said decrees are substantially as follows : "1st. The demurrer filed to the bill by the defendant Spohr should have been overruled *in toto,* and not sustained as to any relief prayed, because the second bond was in point of fact as well as in fact a guardian's bond executed as an additional security to the first, and the suit being for a settlement of the guardianship accounts and for a recovery of the balance due, it was proper to bring all the sureties

before the court.    2d.  Even supposing the second bond was not a guardian's bond, a supposition impossible from the record in this case, but some other kind of a bond, a special commissioner's bond, it was necessary that the obligors should be before the court in this case, because it was upon the execution of this bond that Hedges got possession of the fund, and in tracing the fund, it is absolutely necessary that he and his surety should be before the court.    But whether the demurrer was sustained or overruled is immaterial to the merits of this case, because it is admitted on all hands that the first bond is a guardian's bond, and by reason of this bond the appellants were entitled to a decree for the balance ascertained to be due them by Commissioner Brooke as against both Hedges and his security, Spohr."

To determine the questions decided in the circuit court in this cause satisfactorily, it is essential to first consult and ascertain what is our statute-law bearing upon the subject.    This I will first endeavor to do, and then will proceed to the determination of the questions arising, so far as material or necessary to decide in this cause as the same now stands.

The seventy-ninth chapter of the Code of 1868 of this State, which is upon the subject of partitions and coterminous owners, &c., provides in the third section thereof, that "when partition cannot be conveniently made, the entire subject may be allotted to any party who will accept it and pay therefor to the other parties such sums of money as their interest therein may entitle them to; or in any case now pending or hereafter brought, in which partition cannot conveniently be made, if the interest of those who are entitled to the subject, or its proceeds, will be promoted by a sale of the entire subject, or allotment of part and sale of the residue, the court, notwithstanding any of those entitled may be infants, insane person, or married woman, may order such sale, or such sale and allotment, and make disposition of the proceeds of sale according to the respective rights of those entitled, taking

1880
Special Term.

Reed and Roper
v.
Hedges *et al.*

care, when there are creditors of any deceased person who was a tenant in common, joint tenant or co-parcener, to have the proceeds of such deceased person's part applied according to the rights of such creditors. The court making an order for sale shall, when the dividend of a party exceeds the value of $300.00, if such party be an infant or insane person, require security for the faithful application of the proceeds of his interest, in like manner as if the sale were made under chapter eighty-three."

The second section of chapter eighty-three provides, that " if the guardian of any minor, or the committee of any insane person, think that the interest of the ward will be promoted by a sale of his estate, or estates in which he is interested with others, infants or adults; or if the trustee of any estate or any person interested in any estate in trust, whether he be interested with others or not, think the interest of those for whom the estate is held will be promoted by a sale thereof, such guardian, committee, trustee or company, whether the estate of the minor or insane person, or any of the persons interested, be absolute or limited, and whether there be or be not limited thereon any other estate, vested or contingent, and whether guardian, committee or trustee or the minor, insane person, or any of the persons interested, reside in this State or not, may for the purpose of obtaining such sale file a bill in equity in the circuit court of the county, in which the estate proposed to be sold or some part thereof may be, stating plainly all the estate, real or personal belonging to such infant or insane person, or so held in trust, and all the facts calculated to show the propriety of the sale. The bill shall be verified by the oath of the plaintiff; and the infant or insane person, or the beneficiaries in said trust and the trustee (when not plaintiff) and all others interested shall be made defendants."

The fifth section of the same chapter provides, that "if it be clearly shown, independently of any admissions in the answers, that the interest of the infant, insane per-

son, or beneficiaries in the trust, as the case may be, will be promoted, and the court be of opinion that the rights of no person will be violated thereby, it may decree a sale of said estate, or any part thereof, taking for the purchase-money, when the sale is on a credit, ample security, and if the sale be of real estate, retaining a lien thereon.

The sixth section provides, that "at such sale the guardian *ad litem,* or committee or trustee, shall not be a purchaser, directly or indirectly."

The seventh section provides, that "the proceeds of sale shall be invested under the direction of the court for the use and benefit of the persons entitled to the estates, and in the case of a trust-estate, subject to the uses, limitations and conditions contained in the writing creating the trust. But into whosoever's hands the said proceeds may be placed, the court shall take ample security, and from time to time require additional security, and make any other proper orders for the faithful application of the fund, and for the management and preservation of any property or securities in which the same may be invested, and for the protection of the rights of all persons interested therein, whether such rights be vested or contingent."

Section eleven provides, that " what may be received under this or the seventy-ninth chapter for the real estate of an infant or insane person, sold or divided, or so much thereof as may remain at his death intestate, shall, if he continue until his death incapable of making a will, pass to those who would have been entitled to the land if it had not been so sold or divided." This chapter then proceeds to provide summary proceedings for the sale of the property of minors.

The twelfth section provides, that " In addition to the proceedings authorized by the second section of this chapter, the guardian of any minor, if he deem that the interest of his ward will be promoted by a sale of his estate, or of any estate in which he with others, infants

or adults, is interested, whether the estate of the minor, or of any of the other persons interested be absolute or limited, and whether there be or be not limited thereon any other estate, vested or contingent, may apply by petition, in a summary way, to the circuit court of the county in which the estate proposed to be sold, or some part thereof, may be, describing all the estate, real and and personal, belonging to the minor, and stating plainly all the facts calculated to show the propriety of the sale. The petition shall be verified by the oath of the plaintiff; and the minor and all others interested shall be made defendants, and ten days' notice shall be given to such defendants before such petition can be heard."

The fourteenth section provides, that "if it be clearly shown by the petition, exhibits and evidence adduced, that the interest of the minor will be promoted by the sale, and the court be of the opinion that the rights of no person will be affected thereby, it may order a sale of the estate, or any part thereof, either public or private, on such terms and in such parcels as may be deemed most beneficial to the minor, taking from the purchaser bond with ample security, when the sale is on a credit. At such sale neither the guardian nor guardian *ad litem* shall be a purchaser directly or indirectly. But no estate of any minor shall be sold contrary to the provisions of any will or conveyance by which such estate was devised or granted to the minor."

The fifteenth section provides, that "before such sale is made, the guardian shall in open court enter into bond, with approved security, in a penalty equal to double the value of the estate to be sold, conditioned for the faithful application of the proceeds of sale. Such bond shall be payable to the State, and the court may thereafter order new bond with other security to be given, if deemed necessary."

The sixteenth section provides, that " the provisions of section seven shall govern as to the application of the proceeds of sale. The costs of proceedings may be paid

out of such proceeds, but no attorney's fee shall be taxed therein."

The seventeenth section provides, that "whenever a guardian makes sale of any estate as herein provided, he may be authorized by the court to execute to the purchaser upon payment of the purchase-money a conveyance with covenant of special warranty, or the court may order such sale to be reported for confirmation, and when confirmed, direct such conveyance to be made by the guardian or a commissioner. Every such conveyance shall be as effectual in law as if the same were made by the minor when of lawful age."

Hedges appears to have been appointed guardian of the plaintiffs, by the recorder of Jefferson county on the 14th day of November, 1866, under and by authority of an act of the Legislature of this State. This was done prior to the time the Code of 1868 of this State took effect. The Code of 1868 took effect on the 1st day of April, 1869.

The third section of chapter eighty-two of the Code of 1868, provides that "the recorder of any county in which any minor resides, or if he be resident out of the State, in which he has any estate, may appoint a guardian for him, unless he have a guardian appointed as aforesaid by his father."

The fifth section provides, that "every guardian, unless in the case of a testamentary guardian the will otherwise directs and the recorder in such case deems it unnecessary for the safety of the ward, shall give bond to be approved by the recorder by whom he is appointed, or before whom he accepts the trust, in such penalty as shall be prescribed by the recorder. If any recorder omit to require such a bond, or accept such person as surety or sureties as do not satisfy him of their sufficiency, the recorder so in default shall be liable to the ward for any damages he may sustain thereby."

Section six provides, "that until a guardian shall have given bond, the recorder may from time to time appoint

a curator, who shall give bond as aforesaid, and during the continuance of his trust have all the powers and perform all the duties of a guardian, and be responsible in the same way ; but the recorder in his discretion may dispense with his giving security."

Section seven provides, that "every guardian who shall be appointed as aforesaid, and give bond, when it is required, shall have the custody of his ward, and the possession, care and management of his estate real and personal, and out of the proceeds of such estate shall provide for his maintenance and education. But the father of the minor, if living, and in case of his death the mother, while she remains unmarried, shall, if fit for the trust, be entitled to the custody of the person of the minor, and to the care of his education. And unless the guardian shall sooner die, be removed or resign his trust, (which the circuit court that appointed him, or if he was appointed by the recorder, then the recorder of the county in which he was appointed, may allow him to do), he shall continue in office until the minor shall attain the age of twenty-one years, or, in the case of a testamentary guardianship, until the termination of the period limited therefor. At the expiration of his trust he shall deliver and pay all the estate and money in his hands, or with which he is chargeable, to those entitled thereto."

Section thirteen provides that " the circuit courts in chancery may hear and determine all matters between guardians and their wards, require settlements of the guardianship accounts, remove any guardian for neglect or breach of trust, and appoint or order another to be appointed by the recorder in his stead, and make any orders for the custody and tuition of an infant, and the management or preservation of his estate. Recorders shall have like authority as to removals and appointments, and as to the custody and tuition of the infant, and the management and preservation of his estate, in

cases where the guardian or curator was appointed or qualified by or before them."

Having now cited and referred to the statutes bearing upon and tending to throw light upon the question to be determined in this cause, I proceed to enquire and determine, first whether the bond given in this case before the recorder by Hedges as guardian with Spohr as security is upon its face a valid bond. The condition of this bond does not state the appointment of the guardian. Does this invalidate the bond? It seems a guardian's bond is not invalid, because the condition does not state the appointment of the guardian. *Call* v. *Ruffin,* 1 Call 289; *Pratt* v. *Wright et al.,* 13 Gratt. 175. One guardian's bond may be taken for two infants, as was done in the case at bar. *Call* v. *Ruffin,* 1 Call 289. The condition of the bond in the case at bar is more full than that in the case last cited and also the case of *Pratt* v. *Wright et al.,* 13 Gratt. 175. In the last named case it was held, that " a guardian's bond contains a covenant to indemnify the justices constituting the court at the time it was taken. Although this is not required by the statute, it does not avoid the bond." Although the condition in a guardian's bond is not as extensive as the statute requires, yet as it relates to a part of the duty of the guardian, the bond is not void, but binds the obligors to the extent of the condition. *Pratt* v. *Wright et al.,* 13 Gratt. 175. *Gibson* v. *Beckham et al.,* 16 Gratt. 321, where the whole subject and Virginia cases are reviewed by Judge Allen.

When a court or officer has authority or capacity to take a bond and makes a mistake by omitting some condition prescribed, or inserting a condition not authorized or illegal, unless the statute by express words, or necessary implication, makes it wholly void, the bond is not void ; the good shall not be vitiated by the bad, and the bond may be sued on, so far as the conditions are good, as a statutory bond. See the two cases last cited and also the said case of *Call* v. *Ruffin,* 1 Call 289; *Barnum et al.* v.

*Frost's adm'r et al.*, 17 Gratt. 398, 408, 409 ; *Holliday's ex'rs.* v. *Myers et al.*, 11 West Va. 276. There is no solid distinction between bonds and other deeds containing conditions, covenants and grants not *mala in se* but illegal at the common law, and those containing conditions, covenants or grants illegal, by the express prohibition of statutes. In each case the bonds are void as to the conditions, covenants or grants that are illegal, and are good as to all others which are legal and unexceptionable in their purport. The only exception is, when the statute has avoided the whole instrument to all intents and purposes by express words or necessary implication. See cases last above cited, also *United States* v. *Bradley* 10 Pet. 343, and *Aylet* v. *Roane*, 1 Gratt. 282. The first bond in the case contains a condition " to keep harmless the said recorder of Jefferson county, as also to keep harmless the said recorder, his and every one of his heirs, executors and administrators from all trouble and damage that shall or may arise about the said estate." This condition or covenant, though not required by the law to be inserted in the guardian's bond, does not avoid the bond as to the other material and legal conditions therein contained.

Upon the whole under the authorities cited it seems to me that the material conditions in said bond, barring those as to the recorder, are valid and obligatory as to the guardian and his said security who executed the same.

The second bond which bears date the 19th day of April, 1869, and seems to have been executed before the clerk of the circuit court under and in pursuance of the decree of the circuit court of Jefferson county, made in the case of *William G. Butler et al., plaintiffs* v. *William L. Hedges et al., defendants,* to which the plaintiffs in the cause at bar were parties, though at that time infants. The penalty of this bond is $6000.00, the amount prescribed in the said decree, which is the same as that conained in the first bond. And the conditions of this,

bond are also substantially the same as the first, except that the "circuit court of Jefferson county" and the "said circuit court" are substituted for the "recorder of Jefferson county" and the "said recorder." And the same persons according to the allegations of the bill executed each of said bonds, although the name of the security is spelt differently in different places. It is argued by the counsel of the defendant, Spohr, that the said second bond is invalid, and, if valid for any purpose, no recovery can be had in this suit thereon against said security.

Is said second bond invalid for any purpose as against said surety? This involves an important and deeply interesting question : Had the circuit court the power to take, or authorize its clerk to take, such a bond? Certainly that court, under the said third section of chapter seventy-nine, and seventh section of chapter eighty-three, and the thirteenth section of chapter eighty-two of the Code of 1868 (which took effect on the 1st day of April, 1869, a few days prior to the execution of said second bond), had jurisdiction and authority to designate into whose hands the funds under its control, belonging to the infants, should be placed, and to make orders for the management and preservation thereof. In the case of *Talby et al.* v. *Starke's admr'x et al.*, 6 Gratt. 339, it was held according to the third clause of the syllabus, that "It is not necessary, in the decree for the sale of the land, to direct that the guardian shall give security under section twenty of this act, 1 Rev. Code, ch. 108, pp. 409-10." The proceedings in that case were commenced by a guardian by bill under provisions of said last named chapter of 1 Rev. Code of 1819, which in all material respects is similar to the provisions of the second, third, fourth, fifth and seventh sections of chapter eighty-three of the Code of 1868, as to guardians and infants and the sale of the real estate of infants and the proceeds of the sale thereof. The twentieth section of said ch. 108, 1 Rev. Code, pp. 409-10, provides that the proceeds of

such sale shall be vested and applied for the benefit of the infant, either in the purchase of other real estate, or in such other manner as the court shall think best; but into whatever hands the proceeds of the sale may be placed, the court shall require ample security that they shall be faithfully applied in such manner as the court may direct." The seventh section of chapter eighty-three of said Code of 1868 is copied from the Code of Virginia of 1849, which, as to the proceeds of the sale of real estate of infants, took the place of the said twentieth section of said ch. 108, 1 Rev. Code of 1819, except perhaps the powers conferred upon the court may be more extensive which doubtless arose to a great extent from uniting the estates of insane persons and trust-estates in said section two of chapter eighty-three with those of infants in providing a remedy in equity for the sale thereof.

In the case in 6 Gratt. last referred to the court appointed a special commissioner to sell the land of the infants, &c., upon a credit. The special commissioner made his report of sale, to which there were exceptions filed by purchasers at the sale, and the fourth of these exceptions was as follows, viz: "Because the guardian of the infants had not executed bond for the safe keeping of the money of their wards." The court in April, 1848, overruled the exceptions to the commissioners report, and confirmed the same; and directed the commissioner to proceed to collect the purchase-money, and deposit the same in one of the banks in Richmond to the credit of the cause, subject to the future order of the court. And the decree provided that no part of the moneys, thus to be deposited, should be drawn or paid to the guardian of the infant parties, until she executed bond in double the amount to be received by her as such guardian, payable to the governor and his successors, with such security as the court should approve with condition according to law. Judge Baldwin delivered the opinion of the court and at page three hundred and forty-eight he says: "As to the proceedings in the cause,

prior to the sale, the court is of opinion that there was no irregularity. * * And there was no necessity or propriety for a provision in the decree of sale, as a condition thereof, that security should be given, under the twentieth section of the statute, 1 Rev. Code 410, for the application of the proceeds; inasmuch as the sale was to be on a credit, payments to be secured by the purchaser, and the persons into whose hands they would thereafter come had not been then ascertained." This is all Judge Baldwin (who delivered the opinion of the court)* says upon the subject; and there is no intimation whatever that the court erred in authorizing the proceeds to be paid to the guardian upon his giving security, &c., but, it seems to me, if any inference is to be drawn from the case, it is that the court below did not err in that respect. In the case of *Cooper* v. *Hepburn, et al.*, 15 Gratt. 551, Judge Daniel in delivering the opinion of the court at pages five hundred and sixty-three and five hundred and sixty-four says: "Doubtless one of the leading objects in conferring the power in question upon the guardians and the court, was to enable the former more fully to provide for the support, maintenance and education of their wards."

Mr. Story, in the second volume of his Equity Jurisprudence, section one thousand three hundred and thirty-four, says: "Assuming, then, that the general care and superintendence of infants did originally rest in the crown, when they had no other guardian, the question by whom, and in what manner, the prerogative should be exercised, would not seem open to much controversy. Partaking, as it does, more of the nature of a judicial administration of rights and duties in *foro conscientiæ*, than of a strict executive authority, it would naturally follow *ea ratione*, that it should be exercised in the court of chancery, as a branch of the general jurisdiction originally confided to it. Accordingly the doctrine now commonly maintained is, that the general superintendence and protective jurisdiction of the court of chancery

over the persons and property of infants is a delegation of the rights and duty of the crown ; that it belonged to that court and was exercised by it from its first establishment; and that the general jurisdiction was not even suspended by the statute of Henry VIII, erecting the court of wards and livery."

At section one thousand three hundred and thirty-seven, same volume, Mr. Story says : " But whatever may be the true origin of the jurisdiction of the court of chancery over the persons and property ot infants, it is now conceded on all sides to be firmly established and beyond the reach of controversy. Indeed it is a settled maxim, that the King is the universal guardian to infants, and ought in the court of chancery to take care of their fortunes," &c.

And in section one thousand three hundred and thirty-eight Mr. Story says: " In the first place, in regard to the appointment and removal of guardians, the court of chancery will appoint a suitable guardian to an infant, where there is none other, or none other who will or can act, at least where the infant has property," &c.

At section one thousand three hundred and thirty-nine, same volume, Mr. Story says further: " In the next place, as to the removal of guardians, the court of chancery will not only remove guardians appointed by its own authority, but it will also remove guardians at the common law, and even testamentary or statute guardians, whenever sufficient cause can be shown for the purpose. In all such cases the guardianship is treated as a delegated trust for the benefit of the infant ; and, if it is abused or in danger of abuse, the court of chancery will interpose not only by way of remedial justice but of preventive justice. When the conduct of the guardian is less reprehensible, and does not require so strong a measure as a removal, the court will, upon special application, interfere and regulate and direct the conduct of the guardian in regard to the custody, and education, and maintenance of the infant; and if neces-

sary, it will inhibit him from carrying the infant out of the country, and it will even appoint the school where he shall be educated. In like manner, it will, in proper cases, require security to be given by the guardian, if there is any danger of abuse or injury to his person or to his property."

The fifteenth section of chapter eighty-three of the Code of 1868 certainly contemplates, that when the guardian makes the sale, the proceeds of the sale may by order or decree of the court come into the hands of the guardian. If not, why require the guardian to enter into bond with approved security in a penalty double the value of the estate to be sold, conditioned for the faithful application of the proceeds of the sale, &c., as in that section is provided. And it seems to me that under a fair construction of the last clause of section three of said chapter seventy-nine and the eighteenth section of chapter eighty-two, and section seven of said chapter eighty-three of the Code of 1868 it is competent, and in many cases perhaps eminently proper, for the circuit court to direct the proceeds of realty in a case of partition brought under said seventy-ninth chapter to be placed by the court in the hands of the guardian as such of the infant or infants to whom the same belongs. And I think the circuit court in taking bond with security under the last named section may take the bond from the guardian as guardian ; but perhaps this is not indispensible.

The case of *Lloyd et al.* v. *Commonwealth to use, &c.,* decided by the Supreme Court of Pennsylvania, March 11, 1878, and reported in the "Reporter" of June 19, page 758, was an action on a guardian's bond to the use of a substituted guardian of the minors. The facts, as agreed in a case stated, were as follows : In 1867 Lloyd was duly appointed guardian of certain minors and entered security in the sum of $40,000.00, with J. K. and J. B. Morehead and another, who was not served in the action, as sureties. Subsequently to the appointment of Lloyd,

in 1872, certain realty belonging to the minors' estate, which had come to them by descent, was ordered to be sold by proceedings in partition, and on petition the orphans' court ordered the proceeds to be paid to Lloyd, directing additional security therefor in the sum of $5,000.00, which was duly entered with one Coke, as surety. Lloyd was afterwards discharged by the orphans' court and a substitute appointed. His account being filed, the court found the sum of $25,049.00 due to the minors. No part of the money was ever paid over by Lloyd. By the terms of the case stated, if the court was of opinion that the guardian's sureties were liable for all the moneys which came to the guardian's hands, then judgment to be entered for the plaintiffs for $25,352.36 with interest; but if of opinion, that the sureties were only liable for the amount received from the administrator of the estate from which the minors derived their property, and not for that which was received by the guardian from the sale of the real estate, and for which separate security had been entered, their judgment to be entered for $20,466.40, with interest, &c. The court below entered judgment for the larger sum. The defendant assigned for error the judgment of the court.

Paxton, Judge, delivered the opinion of the court and in the abstract of the opinion appearing in "The Reporter" said: "The record brings up the single question, whether the sureties on the official bond of a guardian, given at the time of his appointment, are responsible for the money of his ward under proceedings in partition, where such sale was not made by the guardian, but the proceeds were received by him. It has never been doubted that the sureties are responsible for the personal estate to which the ward became entitled subsequently to the appointment, when the same has been received by the guardian. The appointment vests in the guardian all of the personal estate, to which the ward was entitled at that time, and the right to receive any that may subsequently come to the minor. The real

estate however vests in him only to the extent of enabling him to take possession of it and collect the rents. He cannot sell it without the order of the orphans' court. Hence in fixing the amount of a guardian's security, it is usual and proper to take into consideration the amount of the personal estate and the rental of the real estate. In the case in hand the sureties admit their liability as to all except the proceeds of the real estate. As to this they contend they are not liable, for the reason that special security was entered therefor by the order of the orphans' court. The question for determination is, whether the second bond was in exoneration of the original as to such proceeds, or was merely cumulative or additional security; or to state the proposition in another form, were the sureties on the original bond liable for the proceeds of the real estate, and if so, were they exonerated by the giving of the second bond? The latter was not given in obedience to any act of assembly. Act March 29, 1832, § 8, (P. L. 191, Par. Dig. 412, pl. 40), provides 'that the orphans' court having jurisdiction, whenever that court may deem it proper, may require a bond with good and sufficient security from every guardian of a minor.' Under this it is clearly competent for the court, not only to require a bond with security, when a guardian is appointed, but also at any subsequent time when in the judgment of the court the interest of the minor requires it. Such contingencies may and often do occur. * * In this case the guardian was not intrusted to execute the order of sale. That was intrusted to some other person, and he doubtless complied with the law in this respect. In the performance of his duty he paid over to the guardian the shares coming to his ward, and the orphans' court, in the exercise of a sound discretion, not in obedience to the command of any statute, required additional security. An argument was made based on the supposed analogy between the case at bar and that of an administrator, who sells real estate of a decedent for the payment of debts

and gives a bond with security for the application of the proceeds. The cases are essentially different; the administrator sells by virtue of an order of court and is required by statute to give special security. The form of an administrator's bond differs widely from the bond given by a guardian. The former is to account only for the goods, chattels, and credits of the deceased, while a guardian's is to "in all respects faithfully perform the duties of guardian." The condition is very broad and covers all the duties of the guardian, one of which is to account for all the moneys of his ward which may come into his hands. We have not here the case of a guardian who has sold the real estate of his ward in pursuance of an order of court and entered special security therefor required by the act of assembly. Whether in such case, the sureties on the original bond of the guardian would be liable for the proceeds is not before us, and is not decided. We think the learned judge of the court below was right in ruling that sureties are responsible for the moneys received by the guardian from the sale of the real estate under the proceedings in partition."

It will be observed that the last clause of section three of chapter seventy-nine of the Code of 1868 provides, that " The court making an order for sale, shall, where the dividend of a party exceeds $300.00, if such party be an infant or insane person, require security for the faithful application of the proceeds of his interest in like manner as if the sale was made under chapter eighty-three." Now the question very naturally presents itself: what is to be done when the dividend of an infant is less than $300.00, and into whose hands is it to be placed by the court as the property of the infant for his benefit and security? The statutes do not say. It seems, however, that a court of equity under its general powers under the thirteenth section of said chapter eighty-two of the Code may, in the exercise of its discretion, make such orders for the preservation thereof as it may deem best for the infant; and that in doing so, if it is satisfied

that the penalty of the bond of the guardian is sufficient to cover and secure it, and that the security or securities of the guardian are solvent, it may order the money to be paid to the guardian ; and if received by the guardian, he and his security or securities should be held responsible therefor to the infant upon the guardian's bond, in so far at least as the penalty of the bond will cover it. Sureties of guardians should be held to have contemplated, at the time of executing the bonds, a possible liability and recovery, whether it be for the personal estate or rents, or the proceeds of realty belonging to the wards, at least to the extent of the penalty of the bonds. The condition of the guardian's bond is broad, and, it would seem, covers all moneys or estate of his ward which comes into his hands. The paramount object of the Legislature in the enactments, to which I have referred, was to secure to the infant the realization of the proceeds of the sale, and I apprehend, if a court of equity in the exercise of its broad discretion under the laws, directs the proceeds of sale of realty, where the dividend of an infant exceeds $300.00, to be paid to the guardian without requiring the execution of a bond with security from the guardian in addition to his official bond as such, and the guardian receives such proceeds of sale, that he and his security in his official bond would be liable for the same upon such bond. But at the same time I am free to say, that the court should be careful about such matters, and that generally it is perhaps most advisable to pursue the directions of the statutes in such cases, as near as may be.

In the case at bar, however, the circuit court (according to the allegations of the bill) did require of the guardian a bond with security in the penalty of $6,000.00 before receiving the proceeds of sale from special commissioner Logie ; and a bond with security was given, to which I have before referred. This bond, I apprehend, must be regarded as additional security from the guardian, as I conceive said last named bond sufficiently

broad and comprehensive in its language. It is true this bond is substantially in the form of the guardian's first bond; but I do not think it can be avoided upon that ground under the views I have expressed, as I think it was competent for the court to require the guardian in such case to give bond as such guardian, with good security, &c. According to the allegations of the bill the parties to each of the bonds are the same. In the case of *Spottswood* v. *Dandridge et al.,* 4 Munf. 289, it was held, that " where an executor dies without any personal representative, a court of equity may, at the suit of a legatee, and *without any previous suit* having been brought against the executor to convict him of a *devastavit,* convene the securities of the executor, or their representatives, and the persons who would be interested in any estate which the executor may have left, and make the securities liable for any misapplication or wasting of the assets, which shall be established in the progress of such suit in chancery. Under like circumstances a court of equity will give relief against the securities in a guardian's bond ; and if the executor of the decedent was also guardian to the legatee, the two sets of securities and their representatives may be jointly sued." Judge Cabell in delivering the opinion of the court in that case at page two hundred and ninety-nine says : "As to the propriety of joining the two sets of securities the court is equally clear. For whenever there is a doubt as to who is to pay, justice to all concerned requires that the persons, as to whom the doubt exists, should be made parties."

Several instruments may generally be united in one bill, when the same parties are liable in respect of each, and the same parties are interested in the money or property which was or is the subject of each. If a father executed three deeds, all vesting property in the same trustees and upon similar trusts for the benefit of his children, and the parties beneficially interested under them are the same, they may all be joined in one bill.

It is not generally necessary to have in such case as many suits as there are instruments. See Story on Eq. Pl. § 278; *a* and note 1.

I am of opinion, that there is no necessity for separate suits upon each of said bonds in the case at bar, and that they were properly joined in one bill. I am further of opinion, that said circuit court erred in its decree in this cause on the 28th day of April, 1876, in sustaining the demurrer of the defendant, Spohr, to so much of the plaintiff's bill as raised the question of the responsibility of said defendant, Spohr, under the said bond of April 19, 1869, or as seeks to make the said defendant, Spohr, liable in this cause for the proceeds of the real estate in the bill mentioned, the court should have overruled the demurrer of said Spohr altogether, and ruled him to answer in a reasonable time, and it appearing by the record that the subsequent decrees rendered in the cause are to a great extent based upon said decree of the 28th day of April, 1876, and that the error of the court committed in that decree entered into and pervades the subsequent decrees rendered in the cause to a great extent, the said subsequent decrees are also erroneous. The cases of *Frazier, &c.,* v. *Frazier's, ex'rs, &c.,* 2 Leigh 642, and *Roberts* v. *Colvin,* 30 Gratt. 358, cited by appellees' counsel, are substantially reviewed and explained by Judge Allen in delivering the opinion of the court in *Gibson* v. *Beckham, et al.,* 16 Gratt. 32, to which I have before referred; and I do not deem it necessary to remark further on these cases.

For the foregoing reasons the said decrees of the circuit court of Jefferson county rendered in this cause on the 28th day of April, 1876, the 15th day of November, 1876, and the 17th day of November, 1876, must be reversed and annulled with costs to the appellants against the defendants, William L. Hedges and Edward Spohr. And this court proceeding to render such decree in the cause as the said circuit court ought to have rendered, it is adjudged, ordered and decreed, that the demurrer of

the defendant, Edward Spohr, to the plaintiffs' bill be and the same is hereby overruled; and this cause is remanded to the circuit court of the said county of Jefferson with instruction and direction to said court to rule the said defendant, Spohr, to answer the plaintiff's bill within such time as the court may deem reasonable, and for such other and further proceedings therein as are in accordance with the principles and rules governing courts of equity.

JUDGES JOHNSON AND MOORE CONCURRED.

DECREES REVERSED. CAUSE REMANDED.